IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

MICHAEL A. DEMUTH,

        Plaintiff,

  v.

COUNTY OF CHENANGO, *et al.*,

        Defendants.

Civil Action No.
3:18-CV-1068 (LEK/DEP)

---

APPEARANCES:

FOR PLAINTIFF:

MICHAEL A. DEMUTH, *Pro se*
Chenango County Jail
279 County Road 46
Norwich, NY 13815

FOR DEFENDANTS:

NONE

OF COUNSEL:

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

ORDER, REPORT, AND RECOMMENDATION

*Pro se* plaintiff Michael A. Demuth, a pre-trial detainee in a local jail facility, brings this domestic relations suit disguised as a civil rights action against the County of Chenango and six employees of the Chenango

County Department of Social Services ("DSS").[1] Plaintiff's complaint and accompanying application for leave to proceed *in forma pauperis* ("IFP") have been referred to me for consideration. Based upon my review of those materials, plaintiff's motion to proceed IFP is granted, but I recommend that the complaint be dismissed.

I. BACKGROUND

Plaintiff commenced this action on September 7, 2018. *See generally* Dkt. No. 1. Named as defendants in plaintiff's complaint are the County of Chenango and six individuals who appear to be employed in

---

[1] This action is one in an avalanche of suits that have been commenced by plaintiff since June 2018. *See Demuth v. Chenango Cty. Corr. Facility et al.*, 9:18-cv-01084-DNH-DEP (filed Sept. 11, 2018); *Demuth v. Cty. of Chenango et al*, 3:18-cv-01068-DNH-DEP (filed Sept. 7, 2018); *Demuth et al v. Chenango Cty. Sheriff's Office et al*, 9:18-cv-01010-DNH-TWD (filed Aug. 23, 2018); *Demuth v. The People of the State of New York et al*, 3:18-cv-00946-DNH-DEP (filed Aug. 10, 2018); *Demuth v. N.Y. State Police et al,* 3:18-cv-00936-GTS-DEP (filed Aug. 8, 2018); *Demuth v. Chenango Cty. Sheriff's Office et al*, 9:18-cv-00915-MAD-CFH (filed Aug. 3, 2018); *Franklin et al v. Comm'n of Corrs. et al*, 9:18-cv-00897-GLS-ATB (filed Aug. 01, 2018); *Demuth v. Chenango Cty. Sheriff's Office et al*, 9:18-cv-00895-GLS-TWD (filed Aug. 01, 2018); *Demuth v. Chenango Cty. Public Defenders Office et al*, 3:18-cv-00876-DNH-DEP (filed Jul. 27, 2018); *Demuth v. Chenango Cty. Sheriff's Office et al*, 9:18-cv-00816-GTS-TWD (filed Jul. 11. 2018); *Demuth v. Chenango Cty. Sheriff's Office et al.*, 9:18-cv-00813-BKS-DEP (Jul. 11, 2018); *Demuth v. Chenango Cty. Sheriff's Office et al*, 9:18-cv-00807-DNH-ATB (filed July 9, 2018); *Demuth v. N.Y. State Police et al*, 3:18-cv-00796-GTS-DEP, (filed Jul. 5, 2018); *Demuth v. Chenango Cty. Sheriff's Office et al*, 9:18-cv-00795-GTS-CFH (filed Jul. 5, 2018); *Demuth v. Chenango Cty. Sheriff's Office et al*, 9:18-cv-00789-LEK-TWD, (filed Jul. 2, 2018); *Demuth v. Hand et al*, 9:18-cv-00769-LEK-TWD (filed Jun. 28, 2018); *Demuth v. Mcbride et al*, 3:18-cv-00768-TJM-DEP (filed Jun. 28, 2018); *Demuth v. Chenango Cnty Dep't of Soc. Servs. et al*, 3:18-cv-00767-LEK-DEP (filed Jun, 28, 2018).

various capacities by the DSS.[2] *Id.* at 1-2. Although plaintiff's complaint is peppered with constitutional buzzwords, his allegations stem from proceedings before Chenango County Family Court and involve two nonbiological children and one biological child—S., B., and C., respectively. *See generally id.* at 3-8. The lack of cogency in plaintiff's complaint makes it difficult to discern the status of any proceedings related to S. and B. It appears that at least with respect to C., however, an abuse or neglect proceeding against plaintiff is pending and ongoing pursuant to Article 10 of the New York Family Court Act. *Id.* at 7-8.

As relief, plaintiff's complaint seeks a declaration that his constitutional rights have been violated, as well an award of compensatory damages in the amount of $5 million. Dkt. No. 1 at 5. Plaintiff is also seeking some form of injunctive relief of an unspecified nature from the court. *Id.* at 1 (citing 28 U.S.C. §§ 2283, 2284, relating to stays of state court proceedings and three judge panels, respectively).

---

[2]  The allegations contained in the present complaint appear to be duplicative of, or at least significantly overlap with, the allegations in an earlier action filed by plaintiff. *See generally* Dkt. No. 1 in *Demuth v. Chenango Cty. Dep't of Soc. Servs. et al*, 3:18-cv-00767-LEK-DEP (filed Jun, 28, 2018). On August 30, 2018, I recommended that the complaint in the matter be dismissed pursuant to the domestic relations exception to this court's jurisdiction and under the *Rooker-Feldman* doctrine. *See generally* Dkt. No. 12 in *Demuth v. Chenango Cty. Dep't of Soc. Servs. et al*, 3:18-cv-00767-LEK-DEP (filed Jun, 28, 2018).

II.   DISCUSSION

   A.   Plaintiff's IFP Application

When a civil action is commenced in federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1).[3] In this instance, because I conclude that plaintiff has now met the requirements for IFP status, his application for leave to proceed without prepayment of fees is granted.[4] Dkt. Nos. 4, 5.

   B.   Sufficiency of Plaintiff's Complaint

      1.   Standard of Review

Because I have found that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. §§ 1915(e), 1915A. Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the

---

[3]   The total cost for filing a civil action in this court is $400.00, consisting of the civil filing fee of $350.00, *see* 28 U.S.C. § 1914(a), and an administrative fee of $50.00. Although an inmate who is granted IFP status is not required to pay the $50.00 administrative fee, he is required to pay, over time, the full amount of the $350.00 filing fee regardless of the outcome of the action. *See* 28 U.S.C. § 1915(b)(3).

[4]   Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

4

court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Similarly, 28 U.S.C. § 1915A(b) directs a court to review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("[W]e have found both sections [1915 and 1915A] applicable to prisoner proceedings *in forma pauperis*.").

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however,

also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under sections 1915(e), 1915A, the court is guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8 of the Federal Rules of Civil Procedure

provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## 2. Analysis

It is well-settled that federal district courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). In accepting matters for adjudication, district courts must insure that the subject matter requirement is met, and may raise the question of jurisdiction *sua sponte*, and at any point in the litigation. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 107 (2d Cir.1997) ("[A] challenge to subject matter jurisdiction . . . may be raised . . . *sua sponte*." (quotation marks and alterations omitted)). "Where jurisdiction is lacking, . . . dismissal is mandatory." *United Food & Commercial Workers Union, Local 919, AFL–CIO v. Centermark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir.1994); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### a. Domestic Relations Exception

The claims in this action, which are couched in terms of

constitutional deprivations, are brought pursuant to 42 U.S.C. § 1983. *See generally* Dkt. No. 1. Ordinarily, the court would possess subject matter jurisdiction over such claims. 28 U.S.C. §§ 1331, 1343. There exists, however, a judicially recognized exception to federal subject matter jurisdiction in matters involving domestic relations. *Ankenbrandt v. Richards*, 504 U.S. 689, 701-04 (1992); *Thomas v. N.Y.C.*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993). Specifically, the Supreme Court has "recognized a 'domestic relations exception' that 'divests the federal courts of power to issue divorce, alimony, and child custody decrees.' "[5] *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12-13 (2004) (quoting *Ankenbrandt*, 504 U.S. at 703).

The exception recognizes that "the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which federal courts lack." *Thomas*, 814 F. Supp. at 1146 (citing *Ankenbrandt*, 504 U.S. at 703-04). "The doctrine also rests on the idea that state courts are peculiarly suited to enforce state regulations and domestic relations

---

[5] "[A]lthough the domestic relations exception originated in the context of diversity cases, some courts have applied the exception in cases based upon federal question jurisdiction since the policy considerations which underlie the domestic relations exception may apply with equal force in cases arising under the court's federal question jurisdiction." *Thomas*, 814 F. Supp. at 1146 (citations omitted).

9

decrees involving alimony and child custody particularly in light of the fact that such decrees often demand substantial continuing judicial oversight." *Id.*

Although plaintiff styles some of his claims as raising constitutional issues, the allegations stem from state domestic relations matters, specifically abuse and neglect proceedings, and the complaint can be fairly construed as being aimed at gaining custody of S., B., and C. Dkt. No. 1 at 4 ("[P]laintiff did in fact lose his children to the system and at this present time is struggling to gain them back."); *id.* at 5 ("[Defendants refuse to work with or even help this plaintiff nor will provide this plaintiff with any sort of visits or calls to his children.").

Where tort claims "begin and end in a domestic dispute," state courts are better suited to adjudicate the claims. *See Schottel v. Kutyba*, No. 06-CV-1577, 2009 WL 230106, at *1 (2d Cir. Feb. 2, 2009) (affirming, based on the domestic relations exception, the district court's dismissal of the plaintiff's complaint alleging, *inter alia*, that the defendants "fraudulently misrepresented to the court the former couple's residence in order to file divorce proceedings in New York," and, as a result, plaintiff was "deprived of custody and visitation rights"). Accordingly, to the extent the complaint is seeking a child custody decree from the court, the court lacks

jurisdiction to adjudicate such a claim. *See, e.g.*, *Amato v. McGinty*, No. 17-CV-593, 2017 WL 9487185, at *8 (N.D.N.Y. Jun. 6, 2017) (Baxter, M.J.), *report and recommendation adopted by* 2017 WL 4083575 (N.D.N.Y. Sept. 15. 2017) (D'Agostino, J.).

### b. The *Rooker-Feldman*[6] Doctrine and the *Younger* Doctrine

Depending on the status of the proceedings before Chenango County Family Court, and specifically whether the state court proceedings are concluded or instead remain pending, either the *Rooker-Feldman* doctrine or the *Younger* doctrine bars plaintiff's remaining claims.

#### i. The *Rooker-Feldman* Doctrine

In the event the relevant underlying state court proceedings are concluded, plaintiff's claims in this court are precluded by the *Rooker-Feldman* doctrine. Under that doctrine, except for the Supreme Court, federal courts are not authorized to exercise appellate jurisdiction over state-court judgments. *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007). In the Second Circuit, the following four requirements must be met for the doctrine to apply: (1) the federal-court plaintiff must have lost in state

---

[6] *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923).

court, (2) the plaintiff must complain of injuries caused by a state-court judgment, (3) the plaintiff must invite district court review and rejection of that judgment, and (4) the state-court judgment must have been rendered before the district court proceedings commenced. *McKithen*, 491 F.3d at 97. "A plaintiff may not overcome the doctrine and seek a reversal of a state court judgment 'simply by casting his complaint in the form of a civil rights action.' " *Rabinowitz*, 329 F. Supp.2d at 376 (quoting *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993))."[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *McKithen*, 481 F.3d at 97 (quoting *Hoblock v. Albany Co. Bd. of Elections*, 422 F.3d 77, 83 (2d Cir. 2005)).

The status of any proceedings related to plaintiff's nonbiological children is less than clear from the fact of the complaint. Dkt. No. 1. To the extent that any proceedings regarding his paternity have been terminated, or to the extent that plaintiff seeks review of decisions that have already been issued by a judge, the complaint is barred by the *Rooker-Feldman* doctrine because plaintiff is effectively attempting to challenge the state court's decision.

## ii. The *Younger* Doctrine

In the event the underlying state court proceedings remain pending, plaintiff's request for this court's involvement implicates the *Younger* abstention doctrine. Under the *Younger* doctrine, "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 197 (2d Cir. 2002); *see generally Younger v. Harris*, 401 U.S. 37 (1971); *see also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 n.16 (1975) (extending the equitable principles that required abstention with respect to injunctive relief in *Younger* apply to requests for declaratory relief as well). In *Sprint Commcn's, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that the *Younger* doctrine is limited to three exceptional circumstances, including (1) state criminal prosecutions; (2) civil enforcement, or "quasi-criminal," proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 72-73. State-initiated child abuse and neglect proceedings are " 'in aid of and closely related to criminal statues.' " *Moore v. Sims*, 442 U.S. 415, 423 (1979) (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)).

At least with respect to C., the letter appended to plaintiff's complaint suggests that abuse and neglect proceedings are ongoing inasmuch as it indicates that plaintiff's visitation with that child was suspended pending, *inter alia*, his release from his incarceration. Dkt. No. 1 at 7-8. That letter further encouraged plaintiff to "start complying" with state court orders and notes that the goal "has been and continues to be" C.'s reunification with plaintiff. *Id.* It would be inappropriate to assume jurisdiction over plaintiff's federal constitutional claims at this time, given the ongoing status of the state court proceeding. *See, e.g.*, *Reinhardt v. Com. of Mass. Dep't of Soc. Servs.*, 715 F. Supp. 1253, 1256 (S.D.N.Y. 1989) (noting "questions of family relations, especially when issues of custody and abuse are involved, are traditionally an area of state concern") (citing *Moore v. Sims*, 442 U.S. 415, 435 (1979)). To the extent that plaintiff desires to raise any potential constitutional claims arising from the state court proceedings, he may do so in that forum. Accordingly, if proceedings involving plaintiff remain pending in state court, his claims in this action are barred by the *Younger* doctrine. *See Morpurgo v. Incorporated Vill. of Sag Harbor*, 327 F. App'x 284, 285-86 (2d Cir. 2009).

C. <u>Whether to Permit Amendment</u>

Ordinarily, a court should not dismiss a complaint filed by a *pro se*

litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could not "determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, I am unable to say with complete certainty that, if permitted leave to amend, plaintiff could not state a cognizable civil rights claim that would not be precluded by the domestic relations exception to jurisdiction, the *Rooker-Feldman* doctrine, or the *Younger* abstention doctrine. Accordingly, I recommend that leave to amend be granted.

If plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, plaintiff must clearly set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790

F.2d 260, 263 (2d Cir. 1986). Plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted)). Finally, plaintiff is reminded that, pursuant to Rule 10 of the Federal Rules of Civil Procedure, any amended complaints "must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

### III. SUMMARY AND RECOMMENDATION

Because plaintiff's IFP application is complete and demonstrates his inability to pay the required filing fee for commencing this action in advance, his request for leave to proceed without prepayment of fees is granted. Turning to the merits of plaintiff's complaint, however, I conclude that his claims are precluded by the domestic relations exception to jurisdiction, the *Rooker-Feldman* doctrine, and/or the *Younger* doctrine.

Based upon the foregoing, it is hereby

ORDERED that plaintiff's application for leave to proceed *in forma pauperis* (Dkt. No. 4) is GRANTED; and it is further hereby respectfully

RECOMMENDED that all of plaintiff's claims in this action be DISMISSED, with leave to amend.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[7] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

_____
David E. Peebles
U.S. Magistrate Judge

---

[7] If you are proceeding *pro se* and are served with this order, report, and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

Dated: October 11, 2018
Syracuse, New York